**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CATHY MARTINEZ, ) | NO. CV 11-6541-E |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PROCEEDINGS**

Plaintiff filed a Complaint on August 16, 2011, seeking review of the Commissioner's denial of benefits. The parties filed a consent to proceed before a United States Magistrate Judge on August 26, 2011.

Plaintiff filed a motion for summary judgment on January 17, 2012. Defendant filed a cross-motion for summary judgment on February 16, 2012. The Court has taken both motions under submission without oral argument. See L.R. 7-15; "Order," filed August 17, 2011.

///

**BACKGROUND**

Plaintiff asserts disability since March 1, 2008, based primarily on alleged psychological impairments and alleged headaches (Administrative Record ("A.R.") 150, 159). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from Plaintiff, two medical experts, and a vocational expert (A.R. 23-58). Although the ALJ found Plaintiff suffers from "severe" affective mood disorder (bipolar), anxiety disorder, post traumatic stress disorder, and substance addiction disorder, the ALJ also found Plaintiff retains the residual functional capacity to perform a full range of work at all exertion levels, albeit with some non-exertional limitations (A.R. 11, 13). According to the ALJ, these limitations restricted Plaintiff to work involving simple, repetitive tasks, no public contact, non-intense contact with coworkers and supervisors, no tasks requiring hypervigilance or responsibility for the safety of others, and no fast paced work (A.R. 13, 16 (adopting psychological medical expert's testimony at A.R. 41)). The ALJ found that a person with these limitations could perform work existing in the national economy as a "store labor person," "electrician helper," and "hand packager" (A.R. 18-19 (adopting vocational expert testimony at A.R. 56-57)). Accordingly, the ALJ found Plaintiff not disabled (A.R. 19). The Appeals Council denied review (A.R. 1-3).

Plaintiff argues that the ALJ erred in finding Plaintiff's headaches not severe, in deeming Plaintiff's headache complaints not entirely credible, and in allegedly failing to consider Plaintiff's headaches in determining Plaintiff's residual functional capacity.

1  See Plaintiff's Motion, pp. 2-10.  Plaintiff seeks a remand for
2  further administrative proceedings (Id. at 10).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards.  See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006).

This Court "may not affirm [the Administration's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Administration's] conclusion."  Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and quotations omitted); see Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007) (same).  However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim.  See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).
///
///

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied.  The Administration's findings are supported by substantial evidence and are free from material[1] legal error.  Plaintiff's contrary contentions are unavailing.

**I.    Substantial Evidence Supports the Conclusion Plaintiff Can Work.**

Substantial evidence supports the ALJ's determination that Plaintiff is not disabled.  In fact, the consultative examiners found Plaintiff to be essentially unimpaired.

Dr. Sandra Eriks, an examining internist, completed an Internal Medicine Evaluation of Plaintiff dated December 29, 2008 (A.R. 270-74).[2]  Plaintiff complained of, <u>inter alia</u>, hyperprolactinemia which allegedly causes Plaintiff to feel pregnant, allegedly constant headaches, and an alleged eating disorder (A.R. 270).  Dr. Erik's physical examination found no abnormalities (A.R. 271-73).  Dr. Eriks observed that Plaintiff's medical records indicated Plaintiff has normal MRI studies of her brain (A.R. 270).  Dr. Eriks opined that Plaintiff would have no exertional limitations (A.R. 273).

---

[1]    The harmless error rule applies to the review of administrative decisions regarding disability.  <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).

[2]    Dr. Eriks observed that Plaintiff was "quite hostile" during the evaluation (A.R. 273).

4

1    The examining psychiatrist also found no limitations.  Dr.
2 Romauldo Rodriguez provided a Complete Psychiatric Evaluation for
3 Plaintiff dated April 3, 2008 (A.R. 242-48).  Plaintiff complained of,
4 inter alia, depression, anger, irritability, and rage for no reason
5 (A.R. 242-43).  Plaintiff admitted to having smoked marijuana since
6 she was 14 years old, to having smoked marijuana the day before her
7 evaluation, and to having used methamphetamines and cocaine up until
8 approximately five years before the evaluation (A.R. 244).  Dr.
9 Rodriguez diagnosed Plaintiff with depressive disorder, not otherwise
10 specified, and post traumatic stress disorder (A.R. 246).  He assigned
11 Plaintiff a GAF score of 70 (A.R. 247).[3]  Dr. Rodriguez deemed
12 Plaintiff stable on her antidepressants and found no functional
13 limitations (A.R. 247).

15    The consultative examiners' findings constitute substantial
16 evidence supporting the ALJ's decision.  See Tonapetyan v. Halter, 242
17 F.3d 1144, 1149 (9th Cir. 2001) (consulting examiner's opinion is
18 substantial evidence that can support an ALJ's finding of
19 nondisability); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.
20 2007) (examining physician's independent clinical findings are
21 substantial evidence).

---

    [3]    Clinicians use the GAF scale to report an individual's overall level of functioning. "A GAF of 61-70 indicates 'some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'" Siegel v. Astrue, 2009 WL 2365693, at *6 n.6 (E.D. Cal. July 31, 2009) (quoting from American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th Ed. 1994)).

1    Additional support for the ALJ's decision exists in the opinions
2 of the non-examining State agency physicians and the testifying
3 medical experts. Tonapetyan v. Halter, 242 F.3d at 1149 (non-
4 examining physician's opinion may constitute substantial evidence when
5 opinion is consistent with independent evidence of record); Lester v.
6 Chater, 81 F.3d 821, 831 (9th Cir. 1995) (same). State agency
7 physician S. Kahn completed a Psychiatric Review Technique form dated
8 December 8, 2008 (A.R. 256-66). Dr. Kahn found only mild limitations,
9 and opined that Plaintiff's psychiatric symptoms do not significantly
10 decrease Plaintiff's ability to function (A.R. 264, 266; see also A.R.
11 268). With respect to Plaintiff's headaches, State agency physician
12 Leonard Naiman stated:

> Headaches expected to respond to prescribed treatment,
> frequent presentations for such are not suggested by
> evidence in file, and triptans were not noted under
> Medications . . . . [Plaintiff was] [n]ot described as
> appearing visibly in discomfort or visibly fatigued at [the
> consultative exam which] reveal[ed] no major deficits of
> neuro, motor, or joint function.

(A.R. 278-79).

   The two medical experts who testified at Plaintiff's
administrative hearing rendered opinions consistent with the
consultative evaluations. See A.R. 33-48 (testimony). Dr. Samuel
Landau reviewed the medical record and testified that he could find no
objective evidence of any severe non-psychological impairment (A.R.

6

34).  Dr. Landau observed that a brain MRI from April 2007 showed no pituitary adenoma, though acknowledging the possibility that Plaintiff could have a microscopic adenoma not visible on the MRI (A.R. 34, 36). Dr. Landau also acknowledged that the record showed some treatment for headaches, but asserted that there was no objective basis for those symptoms (A.R. 34, 36).  Dr. Landau assessed no limitations.

Psychological medical expert, Dr. David Glassmire, reviewed the medical record and testified that Plaintiff suffers from bipolar disorder, post traumatic stress disorder based on childhood abuse, marijuana abuse, and a history of cocaine use (A.R. 38, 40-41).  Dr. Glassmire suggested limiting Plaintiff to work involving simple, repetitive tasks, no interaction with the public, only non-intense interactions with co-workers and supervisors, no tasks requiring hyper-vigilance, and no fast paced work (A.R. 41).  These are the same limitations the ALJ adopted as part of Plaintiff's residual functional capacity (A.R. 17).

The only other physician to offer an opinion regarding Plaintiff's limitations was Plaintiff's treating physician, Dr. Oluwafemi Adeyemo, who treated Plaintiff with antidepressants from March 2008 through at least April 2009.  See A.R. 251-55, 283-86 (treatment records).  Dr. Adeyemo completed a check-box Work Capacity Evaluation (Mental) form for Plaintiff dated February 24, 2010 (A.R. 290-91).  Dr. Adeyemo checked that Plaintiff would have specified
///
///
///

limitations of varying alleged severity.[4]  To the extent Dr. Adeyemo's opinion may have conflicted with the opinions of the other physicians, the ALJ provided specific, legitimate reasons for rejecting Dr. Adeyemo's opinion.  See A.R. 16 (ALJ explaining her reasons for rejecting Dr. Adeyemo's opinion); see also Valentine v. Commissioner, 574 F.3d 685, 692 (9th Cir. 2009) (an ALJ must provide "specific, legitimate reasons" based on substantial evidence in the record for rejecting a treating physician's contradicted opinion).  Plaintiff has not challenged the propriety of the ALJ's rejection of Dr. Adeyemo's opinion in favor of the opinions of the other physicians.

The record contains some conflicting evidence regarding Plaintiff's capacity to work.  It was the prerogative of the ALJ, however, to resolve the conflicts in the evidence.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Where, as here, the

---

[4]   Specifically, Dr. Adeyemo indicated that Plaintiff would have "moderate" limitations in her ability to make simple work-related decisions, in her ability to maintain socially appropriate behavior and in her ability to adhere to basic standards of neatness and cleanliness (A.R. 290-91).  Dr. Adeyemo indicated that Plaintiff would have "marked" limitations in maintaining attention and concentration for extended periods of time, performing activities within a schedule, maintaining regular attendance, being punctual with customary tolerances, sustaining an ordinary routine without special supervision, interacting appropriately with the general public, accepting instruction and responding appropriately to criticism from supervisors, and in responding appropriately to changes in the work setting (A.R. 290-91).  Dr. Adeyemo indicated that Plaintiff would have "extreme" limitations in her ability to work in coordination with or in proximity to others without being distracted by them, and in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (A.R. 290-91).  Dr. Adeyemo also indicated that he anticipated Plaintiff would be absent from work three or more days per month (A.R. 291).

evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision. See Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

**II. The ALJ Did Not Commit Material Error With Respect to the Evaluation of Plaintiff's Headaches.**

Plaintiff argues that the ALJ erred at Step Two of the disability analysis by failing to find that Plaintiff's alleged headaches are "severe." See Plaintiff's Motion, pp. 2-6. Plaintiff further argues that the ALJ erred at Step Four of the disability analysis by assertedly failing to consider Plaintiff's headaches while assessing Plaintiff's residual functional capacity. Id., pp. 9-10. These arguments must be rejected.

In headache questionnaires, Plaintiff reported that she first began experiencing severe headaches in 1987 and that she allegedly has headaches all day, all the time (A.R. 174, 196; see also A.R. 176). Plaintiff claimed she has an empty space in her brain where a pituitary tumor used to be (A.R. 174). Plaintiff took aspirin (or Motrin) for her headaches, and had never gone to an emergency room due to headache pain (A.R. 175, 197; but see A.R. 232-33 (emergency room treatment record from December 2007 for plaintiff for medication refill, where Plaintiff complained of depression, memory loss, confusion, and headaches)). Plaintiff asserted that she has no money for treatment (A.R. 175, 197).

9

The ALJ found Plaintiff's headaches non-severe, explaining: "The record reveals that the claimant's allegedly disabling headaches was [sic] present at approximately the same level of severity prior to the alleged onset date. The fact that the headaches did not prevent the claimant from working since 1987 through 2007 strongly suggests that it [sic] would not currently prevent work" (A.R. 12).[5]

Assuming, arguendo, error in failing to find Plaintiff's headaches "severe," any such error was harmless. In evaluating Plaintiff's residual functional capacity, the ALJ reportedly considered all of Plaintiff's symptoms. See A.R. 14 ("the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence"); see Social Security Ruling 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"); Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (error in failing to find an impairment severe did not prejudice the claimant where the Administration found other impairments severe and considered the effects of the non-severe impairment when analyzing residual functional capacity); see also Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (same); see generally McLeod v. Astrue, 640 F.3d 881, 886-89 (9th Cir. 2011) (claimant bears the burden of showing a substantial likelihood of prejudice from the Administration's errors). The ALJ correctly observed that treatment records (including those for

---

[5] Plaintiff testified that she was laid off from her last job as a receptionist in September 2007, due to the declining housing market (A.R. 28-29). Plaintiff thereafter applied for similar work, but without success (A.R. 29).

Plaintiff's headaches) reveal that Plaintiff received routine, conservative, and non-emergency treatment after her alleged onset date (A.R. 15).[6] As discussed more fully below, the ALJ correctly discounted the credibility of Plaintiff's subjective complaints of pain, relying on Plaintiff's inconsistent statements, a lack of objective medical evidence to support the complaints, and the fact that Plaintiff had demonstrated an ability to perform her past relevant work at least until she was laid off (A.R. 15). Thus, the ALJ did consider evidence of Plaintiff's headaches in determining Plaintiff's residual functional capacity; the ALJ simply did not believe the headaches caused any material limitations. Any error in failing to consider evidence of Plaintiff's headaches more expressly or more fully was harmless.

Given the ALJ's analysis at Step Four and the lack of any medical source statements or medical records suggesting that Plaintiff has any headache-related impairments or limitations, the ALJ's failure to deem Plaintiff's headaches "severe," if error, was also harmless. Cf. Hurter v. Astrue, 2012 WL 32138, at *4 (9th Cir. Jan. 6, 2012) (deeming harmless any error of the ALJ to consider explicitly certain alleged impairments in determining claimant's residual functional

---

[6] Plaintiff was treated at Riverside County Regional Medical Center from December 2007 through at least March 2010 (A.R. 225-41, 293-329). Plaintiff, who was 50 years old at the outset of treatment, reportedly had a pituitary adenoma since age 30 (A.R. 225). Plaintiff complained of headaches and admitted to smoking marijuana daily for her symptoms (A.R. 225-26, 228-29, 232, 305, 312, 317-18). Plaintiff reportedly had stopped smoking marijuana by June 2009 (A.R. 302). Plaintiff was diagnosed with pituitary adenoma, addiction to marijuana, depression and anger, hyperlipidemia, headaches and insomnia (A.R. 227). Plaintiff received hormone therapy (A.R. 295-302, 310, 315, 319).

capacity, where the ALJ discussed the alleged impairments at Step Two and found them non-severe, and the medical evidence provided meager support for alleged impairments). As discussed above, substantial evidence supports the ALJ's conclusion that Plaintiff can work notwithstanding the combined effects of her physical and mental impairments.

**III. The ALJ Did Not Commit Material Error By Deeming Plaintiff's Headache-Related Complaints Less Than Fully Credible.**

Plaintiff also argues that the ALJ did not properly assess Plaintiff's subjective complaints regarding her alleged headaches. See Plaintiff's Motion, pp. 5-8. Plaintiff has failed to demonstrate any material error.

The subjective complaints expressed in Plaintiff's testimony had little or nothing to do with Plaintiff's alleged headaches. Indeed, when asked "[I]n your own words, what keeps you from working now?", Plaintiff gave a response that did not even mention headaches. Plaintiff claimed she could not work because she allegedly has a lot of pregnancy symptoms, including lactation (even though she was not then pregnant), is bipolar, "can rage in just a second," and does not have the patience to deal with another colleague (A.R. 29-30; see also A.R. 243 (Plaintiff asserting that her pituitary tumor secretes prolactin which causes pregnancy symptoms)). Plaintiff testified that if she felt depressed or experienced pregnancy symptoms, she would sleep all day (A.R. 49). Plaintiff said she tried to have good days on Thursdays so she could spend time with her grandchild (A.R. 49).

Plaintiff said she can manage her own hygiene, but claimed she does not cook for herself and rarely shops for groceries (A.R. 50-51).

Plaintiff's only mention of headaches during her testimony was an admission that she had smoked marijuana "to help with my headaches," coupled with a denial that she had ever taken any other drugs (A.R. 32).[7] When examined by the medical expert, however, Plaintiff admitted that she had used cocaine a "few times" when she was 19 or 20 (A.R. 40).

The ALJ found Plaintiff's allegations concerning her alleged limitations less than credible, explaining that the allegations were not supported by the "relatively benign medical evidence" and "lack of more aggressive treatment" (A.R. 14-15). As discussed above in connection with the severity issue, the ALJ also reasoned that Plaintiff's working for 20 years despite the alleged headaches strongly suggests that the headaches were not and are not disabling (A.R. 12). According to the ALJ, the fact that Plaintiff had stopped working for reasons unrelated to her own medical condition similarly

---

[7] By contrast, in a Function Report - Adult form dated October 9, 2008, Plaintiff reported that she spends her days trying to deal with her headaches (A.R. 176). Plaintiff reportedly stayed in bed which supposedly makes her depressed (A.R. 176). Plaintiff needed no help with personal care, prepared frozen dinners daily, and cleaned her house one room at a time (A.R. 177-78). Plaintiff reportedly went outside once a week with her friend who drives her (A.R. 179). Plaintiff could shop for food and household supplies (A.R. 179). Plaintiff supposedly had problems getting along with others if they look at her "the wrong way" (A.R. 181). Plaintiff reportedly could get along with authority figures until they make her mad, and then she allegedly loses control (A.R. 182). Plaintiff supposedly was afraid to go outside (although she does go outside) (A.R. 182).

suggests that Plaintiff is not as limited as she asserts and could perform her past relevant work (A.R. 15). Finally, the ALJ stressed that the credibility of Plaintiff's subjective complaints was diminished by Plaintiff's inconsistent statements (e.g., reporting that she did not drive (A.R. 179), but testifying that she drives occasionally (A.R. 31); admitting to a consultative examiner that Plaintiff used methamphetamine and cocaine in the past (A.R. 244), but testifying that she used no drugs other than marijuana in the past (A.R. 32)).

An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The discounting of a claimant's testimony regarding subjective symptoms must be supported by specific, cogent findings. See Lester v. Chater, 81 F.3d at 834; see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); Varney v. Secretary of Health and Human Serv., 846 F.2d 581, 584 (9th Cir. 1988) (generally discussing specificity requirement); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (finding that ALJ must offer "specific, clear and convincing" reasons to reject a claimant's testimony where there

///
///
///
///
///
///

is no evidence of malingering).[8] The ALJ stated sufficient reasons for deeming Plaintiff's subjective complaints less than fully credible.

First, as discussed in the ALJ's opinion and herein, the medical evidence does not support Plaintiff's allegations of disabling headaches. Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor. . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As previously indicated, the ALJ pointed out inconsistencies between Plaintiff's testimony and her reports, as well as the incongruity of Plaintiff's documented ability to work during a time when she claimed to have suffered daily headaches (A.R. 15). Such inconsistencies can justify the rejection of a claimant's credibility. See Burch v. Barnhart, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."); Thomas v. Barnhart, 278

---

[8] In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the arguably more rigorous "clear and convincing" standard. See, e.g., Taylor v. Commissioner, 659 F.3d 1228, 1234 (9th Cir. 2011); Brown v. Astrue, 405 Fed. App'x 230 (9th Cir. 2010); Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009); Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

1  F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's
2  testimony and the claimant's conduct supported rejection of the
3  claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th
4  Cir. 1999) (inconsistencies between the claimant's testimony and
5  actions cited as a clear and convincing reason for rejecting the
6  claimant's testimony).

8  Finally, the ALJ properly emphasized the "routine, conservative"
9  nature of Plaintiff's medical treatment (A.R. 15). A conservative
10 course of treatment may discredit a claimant's allegations of
11 disabling symptoms. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th
12 Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (treatment of ailments
13 with over-the-counter pain medication is "conservative treatment"
14 sufficient to discount a testimony); Meanel v. Apfel, 172 F.3d 1111,
15 1114 (9th Cir. 1999); see also Bunnell v. Sullivan, 947 F.2d 341, 346
16 (9th Cir. 1991) (failure to seek medical treatment can justify an
17 adverse credibility determination); Fair v. Bowen, 885 F.2d 597, 603-
18 04 (9th Cir. 1989) (same).
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For all of the reasons discussed herein, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 26, 2012.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court has considered and rejected each of Plaintiff's arguments. Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration. See generally McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).

17